## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| 75 PRINTERS PARKWAY PARTNERS LLC, a Florida limited liability company, SUMMIT PRIMARY AND PAIN LLC, a Colorado limited liability company, and SUMMIT PRIMARY CARE PLLC, a Colorado professional limited liability company, MIKAEL SEAN OAKLEY, an individual, | Case No.: _____ |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | INJUNCTIVE AND EQUITABLE RELIEF DEMANDED |
| ERIC PAPALINI, an individual, JOSEPH "JOE" P. MULVIHILL, an individual, 75 PRINTERS PARKWAY HOLDINGS LLC, a Florida Limited Liability company, MERIDIAN DIAGNOSTICS, LLC, a Colorado limited liability company, CAMBRIDGE GROUP, INC., a Florida profit corporation, EQUITIFIRST FUNDING, INC., a Florida profit corporation, and "John Doe", an unknown individual, | |
| Defendants. | |

## <u>VERIFIED COMPLAINT</u>
## <u>FOR DAMAGES AND EQUITABLE AND INJUNCTIVE RELIEF</u>

COMES NOW, 75 PRINTERS PARKWAY PARTNERS LLC ("the

Partnership") MIKAEL SEAN OAKLEY ("Mr. Oakley"), SUMMIT PRIMARY

AND PAIN LLC ("Summit LLC"), and SUMMIT PRIMARY CARE PLLC ("Summit Care") (collectively the two Summits are referred to herein as "Plaintiffs Summit"), the Plaintiffs, represented by undersigned counsel, and hereby sue ERIC PAPALINI ("Mr. Papalini"), JOSEPH "JOE" P. MULVIHILL ("Mr. Mulvihill"), 75 PRINTERS PARKWAY HOLDINGS LLC (the "Holding Company"), MERIDIAN DIAGNOSTICS, LLC ("Meridian"), CAMBRIDGE GROUP, INC. ("Cambridge Group"), EQUITIFIRST FUNDING, INC. ("EquitiFirst"), and "JOHN DOE", the Defendants (collectively, the "RICO Enterprise Defendants"), alleging as follows:

## <u>SUMMARY OF THE ACTION</u>

1.     This is an action for equitable relief and damages in excess of $2.5 million, exclusive of costs, interest and attorney's fees, and treble damages under state and federal RICO statutes, and state law torts.

2.     Defendants Papalini and Mulvihill conspired together and acted, by and through corporate entities which they control, namely the Holding Company, Meridian, Cambridge Group and EquitiFirst, to misappropriate the funds and assets of Plaintiffs, including chattel, real property and funds, and to fraudulently represent to third parties, including the Florida Secretary of State, the El Paso County, Colorado's Assessor's Office, banks, attorneys and the general public, among others, that they were authorized to do so.  In so doing they utilized wires and mails, in

2

violation of 18 U.S.C. §§1343 and 1344.  Over the course of their conspiracy, the RICO Enterprise Defendants, acting in concert:

a. encumbered, through unauthorized and invalid mortgages, real property which is rightfully owned by the Partnership, located at 75 Printers Parkway, Colorado Springs, CO (the "Real Property");

b. executed a false and unauthorized deed between themselves for the Real Property and recorded that deed with the El Paso Property Recording Office;

c. wrongfully withdrew, or caused to be withdrawn, funds from the bank operating account of the Partnership on multiple occasions, diverting them to unrelated corporate entities or otherwise misusing the appropriated funds;

d. wrongfully removed the name of Plaintiff Oakley from the Partnership's corporate filing with the Florida Secretary of State;

e. created an entity with a strikingly similar name to the Partnership for the purpose of lending legitimacy to their fraudulent activities;

f. attempted to gain control of Plaintiffs Summit LLC and Summit Care and their business by causing to be created another entity with a name strikingly similar to Plaintiffs Summit;

3

g.  caused a tracking device to be placed on the automobile of Plaintiff Oakley;

h.  wrongfully entered the premises leased by Plaintiffs Summit over the weekend hours, knowing no one would be present, and removed a piece of sensitive medical equipment owned by Plaintiffs Summit, the Sciex 4500 Machine, valued at $297,000;

i.  attempted to de-rail Summit's insurance claim for the theft of the Sciex 4500 Machine by: (i) suggesting that the reimbursement from the insurance company should go to Defendant Papalini, without disclosing that he had taken the machine; (ii) telling the insurance investigator that Mr. Papalini owned the machine, when in fact he had sold it to Plaintiffs Summit a year prior for the full purchase price, and Plaintiffs Summit had an insurance contract and service contract on the Machine, had it on Summit Care's locked premises, and had paid the year prior to have it moved to those premises; (iii) did not respond to requests to provide the alleged "evidence" of "repossession" and warnings of impending repossession that they had falsely told the insurance investigator they had sent to Summit; (iv) subsequently denied having any knowledge of the location of the Machine or having been involved in its removal;

4

j. attempted to legitimize the theft of the Real Property by filing a false tax return for the Partnership on February 4, 2021, after a suit had been filed in Colorado to defend the Real Property.

3. As a result, Plaintiffs have been damaged by the loss of rental income from the Real Property, the loss of revenue derived from the use of the Sciex 4500 Machine, the loss of compensation under the insurance policy insuring the Sciex 4500 Machine, from which a new machine could have been purchased, inability to manage their Real Property, including repairs and maintenance, the filing of a false tax return, and emotional distress.

4. To obtain just compensation for this organized fraudulent activity, Plaintiffs seek treble damages, plus interest thereon, and the costs of this suit, including reasonable attorneys' fees, pursuant to Title 18, United States Code, Sections 1962(c) and (d), and Section 1964 ("RICO"). Plaintiffs also seek compensatory and exemplary damages under applicable Florida and Colorado state and common law, and injunctive and declaratory relief.

## PARTIES

5. Plaintiff 75 Printers Parkway Partners LLC ("Printers Parkway Partners" or "the Partnership") is a limited liability Florida company with its principal place of business at 7575 Dr. Phillips Blvd., Suite 245, Orlando, Florida 32819. Its two owners and members are Plaintiff Oakley and Defendant Papalini.

5

Since the RICO activities described herein were committed in a conspiracy between Defendant Papalini and the other defendants, a demand to Defendant Papalini that the Partnership file suit would be futile.  Further, past demands to Defendant Papalini to cease his fraudulent activities have been rebuffed.

6.      Plaintiff 75 Printers Parkway Partners LLC maintains a bank operating account in Orlando, Florida.

7.      Defendant 75 Printers Parkway Holdings LLC (the "Holdings Company") is a limited liability Florida company with its principal place of business at 7575 Dr. Phillips Blvd., Ste 255, Orlando Florida  32819.

8.      Plaintiff Summit Primary Care PLLC ("Summit Care") is a Colorado professional limited liability company with its principal place of business at 850 E Harvard, Suite 305, Denver, Colorado  80210.

9.      Plaintiff Mikael Sean Oakley is an individual whose primary residence is in Windermere, Orange County, Florida.

10.      Defendant Eric Papalini is an individual whose primary residence is in Orlando, Orange County, Florida.  He operates and has operated in the past many businesses which are/were incorporated in the State of Florida, including:

    a.  Fryer Financial Services, Inc.;
    b.  Magnolia Bay, LLC;
    c.  BZ Products, LLC;
    d.  Sea Luxury Group, LLC;
    e.  12733 Jacob Grace Partners, LLC;

6

    f.  9137 Sloane Street Partners LLC;
    g.  Encore Risk Management, LLC;
    h.  Arcam Healthcare Solutions II, LLC;
    i.  Marina Drive Partners, LLC;
    j.  Hopp Consulting LLC;
    k.  Equitifirst, Inc.;
    l.  The Cambridge Group, Inc.;
    m.  10819 Emerald Chase Drive Partners Corp;
    n.  404 Ololu Drive Partners Corporation;
    o.  Equitifirst Funding, Inc.;
    p.  Strategic Medical Advisors Inc.;
    q.  75 Printers Parkway Partners LLC;
    r.  Hopp Enterprises Co;
    s.  Omni Genetics, LLC;
    t.  Sea Luxury Group 2, LLC;
    u.  The Cambridge Group Construction LLC;
    v.  Longboat Key Charters, Inc.;
    w.  West Orange Equipment Services Inc.;
    x.  Performance Management, Incorporated;
    y.  Arcam Healthcare Solutions LLC;
    z.  Loan Support Services Inc.

11.    Defendant Joseph ("Joe") Mulvihill is an individual whose primary residence is in Orlando, Orange County, Florida.  He operates and has operated in the past many businesses which are/were incorporated in the State of Florida, including:

    a.  The Mulvi Group LLC;
    b.  9137 Sloane Street Partners LLC;
    c.  Fat One's Hot Dogs & Italian Ice, LLC;
    d.  Coltrain Funding Group LLC;
    e.  Bowtie Man Media Group, Inc.;
    f.  Fatty Fla Mall, LLC;
    g.  Fat-One Foods, LLC;
    h.  Meridian Healthcare Solutions LLC;
    i.  The Aftr Prty LLC;

j.  75 Printers Parkway Holdings LLC; and

k.  Livewire Entertainment, Inc., through which he produces/manages the R&B band Boyz II Men.

12.  Defendant Meridian Diagnostics is a limited liability company incorporated in the State of Colorado by Defendant Mulvihill.  Its main business address is in Colorado Springs and its mailing address is in Orlando, Florida.

13.  Defendant The Cambridge Group, Inc. is a for-profit corporation incorporated in the State of Florida by Defendant Papalini, with its principal place of business in Orlando, Orange County, Florida.  It holds a bank account in the State of Florida.

14.  Defendant EquitiFirst Funding, Inc. is a for-profit corporation incorporated in the State of Florida by Eric Papalini, with its principal place of business in Orlando, Orange County, Florida.  It holds a bank account in the State of Florida.

15.  Defendant John Doe is an unknown individual whose residence is not yet known.

16.  Plaintiff Summit Primary and Pain LLC ("Summit LLC") is a Colorado limited liability company founded and managed by Mikael Sean Oakley, with its principal place of business in Colorado.

17.  Defendants Eric Papalini, Joseph "Joe" P. Mulvihill, 75 Printers Parkway Holdings LLC, Meridian Diagnostics, LLC, Cambridge Group, Inc., and

8

Equitifirst Funding, Inc., are collectively referred to herein as the "RICO Enterprise Defendants".

18.     Through discovery, Plaintiffs anticipate that additional defendants and co-conspirators may be identified, and reserve the right to amend the Complaint.

## **PARTIES, JURISDICTION AND VENUE**

19.     This action arises under federal RICO statutes and the statutory and common law of Florida and Colorado.

20.     Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1367 and 18 U.S.C. § 1961, et seq.  There is federal question jurisdiction because Plaintiffs' Civil RICO claims allege violations of federal law.  There is supplemental jurisdiction over Plaintiffs' state law claims, because they arise out of the same case or controversy as the federal law claims, and all claims in this action arise out of a common nucleus of operative facts.

21.     Personal jurisdiction exists over the RICO Enterprise Defendants because they are citizens of Florida, licensed or registered to do business in Florida and/or are conducting business in Florida.  Further, personal jurisdiction exists because the RICO Enterprise Defendants, through their racketeering activities, committed criminal and tortious acts in the Middle District of Florida, directed these acts towards the Middle District of Florida, utilized instrumentalities located in the

9

Middle District of Florida to carry out these acts as alleged in this Complaint, and have damaged Plaintiffs in the Middle District of Florida.

22.   Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and 18 U.S.C. § 1965(a) because all RICO Enterprise Defendants are residents of this District,[1] all RICO Enterprise Defendants transact their affairs in this District, and a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this District.  Further, the Operating Agreement of Plaintiff 75 Printers Parkway Partners LLC specifies that all actions brought by parties to the Agreement, which are Plaintiff Mikael Sean Oakley and Defendant Eric Papalini, shall be brought in the Middle District of Florida.

23.   All conditions precedent to the filing and maintenance of this action were performed, occurred, or waived prior to the commencement of this action.

## GENERAL ALLEGATIONS

24.   Mr. Oakley and Mr. Papalini formed 75 Printers Parkway Partners (the "Partnership") to acquire and manage a piece of real property located at 75 Printers Parkway, Colorado Springs, CO (the "Real Property").  The Real Property consists of a parcel of land and a commercial building which sits upon the parcel and is zoned

---

1.     With the possible exception of John Doe, who has not yet been identified and whose residence is therefore unknown.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

for "special use" and the subcategory of "medical offices".  A true and accurate copy of the Partnership's deed to the Property is attached hereto as Exhibit 1.

25.    The Partnership acquired the Real Property for $1,550,000 on September 18, 2020.  The purchase of the property was initially financed through: a) a $1,200,000 balloon mortgage (the "Reed Walker Mortgage") from the Reed Walker Revocable Trust, as Mortgagor, and the Partnership as Mortgagee.  Pl. Exh. 2.  The Reed Walker Mortgage is signed by both Mr. Papalini and Mr. Oakley and was recorded in the public property records of El Paso County, Colorado on September 18, 2020; and b) $309,811.68 cash.

26.    Based on information and belief, three days later, on September 21, 2020, Eric Papalini took out a mortgage (the "Holston Mortgage") on the Real Property for $175,000, without first notifying his partner, Plaintiff Oakley, as required under the Operating Agreement.  Pl. Exh. 3.  The Mortgagor was Bob Holston and the Mortgagee was the Partnership.    The Holston Mortgage was not recorded.

27.    Until late last January, 2022, three medical-services corporations rented office space at the Real Property as tenants and were liable to the Partnership for monthly rent.

28.    Summit Primary and Pain LLC ("Summit LLC") is a limited liability company organized in the State of Colorado and formed by Mikael Sean Oakley on

May 19, 2020.  Summit employs approximately 50 full-time employees.  Summit LLC partners with Summit Primary Care PLLC ("Summit Care"), a physician-owned professional limited liability company, to provide medical services.

29.    On or about September 15th, 2020, Summit Care became a tenant of the Partnership and occupies the entire second floor of the Real Property.  The lease between Summit Care and the Partnership specifies that the landlord may not enter Summit Care's rented premises without prior authorization of the tenant.

30.    On December 22, 29 and 30, 2020, Plaintiffs Summit sent three bank wires, in the amounts of $220,00, $220,000 and $240,000, respectively, to Defendant Papalini by way of his company, Defendant EquitiFirst.  Pl. Exh. 4.  The total amount, $680,000, was sent via three bank wires because at that time Summit was limited to sending a maximum of $250,000 by bank wire per calendar week.  The bank wires were for: a) the purchase, from Defendants Cambridge and Papalini, of a heavy piece of used medical diagnostic equipment, the "Sciex Triple Quad 4500 System", along with two required attachments, (collectively, the "Sciex Machine") for $297,000, which had been its original purchase price when new; and b) a loan to Defendant Papalini and/or his companies, Defendants Cambridge Group and EquitiFirst, for $383,000.

12

31.     Plaintiffs Summit paid to have the Sciex Machine moved to Summit's leased premises, and purchased a maintenance contract and insurance policy for the Machine.  Pl. Exh. 26.

32.     On or about March 1, 2021, Plaintiff Oakley first learned of the Holston Mortgage.  Plaintiff Oakley objected to the mortgage initially but later accepted it as a reimbursement to Defendant Papalini and/or his company EquitiFirst for the cash equity of $175,000 he had put into the Real Property; in line with this understanding, Defendant Papalini retained the $175,000 from Bob Holston and did not deposit the funds in the Partnership's bank account.

33.     On March 18, 2021 Plaintiff Oakley, through Plaintiff Summit LLC, lent Defendants Meridian and Mulvihill $60,240.02 for the purchase of lab equipment (ThermoFisher Quant Studio 3) and supplies for Meridian; Plaintiff Oakley did this favor for Defendants Meridian and Mulvihill because Meridian had not yet established an account with the manufacturer of the equipment.  Pl. Exh. 5.

34.     On April 17, 2021, Plaintiff Oakley informed Defendants Mulvihill and Papalini both verbally and by text that he would not be partnering with them in their purchase of a yacht, "Harmony".

35.     On April 29, 2021, Mr. Oakley, through Summit, lent $60,000 to Defendants Papalini and/or Cambridge Group for the purchase of a private plane. The money was sent via bank wire to Cambridge Group.  Pl. Exh. 7.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

36.     On May 17, 2021 Plaintiff Oakley met with Defendants Papalini and Mulvihill in Orlando to discuss Plaintiff Mulvihill's company, Meridian.  Prior to that meeting Defendants Papalini and Mulvihill had been urging Plaintiffs Summit to send blood and clinical laboratory work to Defendant Meridian.  However, after consulting with attorneys, Plaintiff Oakley informed Defendants Papalini and Mulvihill at the May 17 meeting that Plaintiffs Summit would not be able to send any labs to Meridian, because he and Dr. Wilner believed to do so would be a violation of Stark and Anti-Kickback laws, 42 U.S.C. §§ 1320 et. seq., 1395nn. Based on information and belief, this refusal greatly contributed to the breakdown of the relationship between Mr. Oakley and Messrs. Papalini and Mulvihill.

37.     On May 24, 2021, Mr. Oakley lent $300,000 to Mr. Papalini and Mr. Mulvihill towards the purchase of a yacht, "Harmony," to be held in Mr. Papalini and Mr. Mulvihill's names.  The money was delivered via bank check to Mr. Mulvihill.  Pl. Exh. 8.  Mr. Mulvihill subsequently added the words "loan payback" in the memo line of the check.  Based on information and belief these words referenced an internal loan between Mulvihill and Papalini, to which Mr. Oakley was not a party.  For the purposes of paying out this check, funds were transferred between banks using wires.

38.     Based on information and belief, on or about June 3, 2021, Defendant Papalini began making payments to Defendant Mulvihill for money that he

14

personally owed Defendant Mulvihill out of the Partnership's assets, without Plaintiff Oakley's knowledge or consent.  In February, 2022, Defendants Mulvihill and Papalini first claimed that the Mortgage Papalini had supposedly executed with Mr. Holston, without Mr. Oakley's consent, had been purchased by Mr. Mulvihill, again without Mr. Oakley's consent.  However, payments were made by Mr. Papalini out of Partnership funds to **both** Mr. Holston and Mr. Mulvihill for June, July, August and September, 2021, contradicting the February 2022 assertion that Mr. Mulvihill purchased the Holston Mortgage.  The document that purports to memorialize the purchase of the Holston Mortgage by Mr. Mulvihill is dated July 15, 2021.  Pl. Exh. 22, p. 35.[2]  *See* ¶ 26, *supra*.

39.     On June 10, 2021, Plaintiff Oakley met with Defendant Mulvihill at Starbucks on Conroy Windermere Road in Orlando to discuss Defendant Papalini's increasingly erratic behavior, his constant need for cash, his taking out of the Holston Mortgage without Mr. Oakley's consent, and the diversion of Partnership assets to Defendant Mulvihill without Plaintiff Oakley's consent.  Pl. Exh. 9.  The nature of the Partnership and the fact that it was owned jointly by Plaintiff Oakley and Defendant Papalini was discussed, as it had been in the past.

---

2.     However, the mortgage document referenced in the assignment has a date of September 18, 2020—the date of the closing on the Real Property—rather than the date listed on the Holston Mortgage, September 21, 2020.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

40.   On June 22, 2021, Plaintiff Mulvihill made his first trip to Colorado to see the suite his company, Defendant Meridian, leased at the Real Property.  Since it was Plaintiff Mulvihill's first visit, Plaintiff Oakley and Defendant Papalini showed him around the Real Property.  Defendant Mulvihill also made the trip to meet Dr. Kashi and Dr. Heckle, who were lab directors working with Defendant Meridian at the time.  Afterwards, Plaintiff Oakley treated his friends, Defendant Mulvihill and Defendant Papalini, along with their family and friends, Brittany Papalini, Kristi Fairall, Dr. Heckle and Dr. Kashi, to dinner at the Cowboy Star Restaurant in Colorado Springs.  At the dinner the fact that Plaintiff Oakley and Defendant Papalini were partners in their ownership of the building was mentioned repeatedly.

41.   On September 12, 2021, Plaintiff Oakley met with Defendants Papalini and Mulvihill.  At that meeting the three discussed Defendant Meridian's formation, the Real Property, the Partnership, Plaintiff Oakley's business Summit, another business in which Defendant Papalini was an officer, Springs Medical Associates, and Defendant Papalini's ongoing divorce.  Plaintiff Oakley informed Defendants Papalini and Mulvihill that he and Plaintiffs Summit would no longer be able to lend them money for Defendant Meridian's startup, or for any other business ventures Defendants Papalini or Mulvihill were contemplating or had in progress.  In order to ease the sting of the message and in an effort to smooth relations, Plaintiff Oakley

16

explained that Medicaid had made a dramatic reduction in its reimbursements beginning August 1, 2021, and therefore Plaintiffs could not afford to continue to loan money.  In truth, as noted above, Plaintiff Oakley had become gravely concerned about the spending practices of Defendant Papalini, as both Defendant Mulvihill and Papalini well knew.

42.     On October 3, 2021, Plaintiff Oakley met with Defendant Papalini and with Bob Holston, at Bob Holston's house, to discuss Defendant Papalini's continual demands for cash infusions for himself and various business entities in which he was involved.  *See* ¶ 46, *infra*.  The existence of the Partnership and its structure, as well as Plaintiff Oakley's ownership interest in the Partnership as a member, was discussed.  Neither Holston nor Papalini mentioned the material fact of the purported conveyance of the Holston Mortgage to Defendant Mulvihill on July 15, 2021, despite being aware that Plaintiff's Oakley's consent was required.

43.     Plaintiff Oakley had been giving cash to Defendant Papalini, whom he considered a long-time friend, at Defendant Papalini's urging.  Defendant Papalini called the payments "consulting" fees, which he rationalized were due to him for "consulting" services he had "rendered" in Plaintiff Oakley's setting up Plaintiff Summit LLC.  In fact, based on knowledge and belief, Defendant Papalini had only ever been involved in one medical services company, Springs Medical Associates, from which he withdrew a great deal of money, and the company is currently in

17

bankruptcy. *See* 20-17026-KHT, United States Bankruptcy Court, District of Colorado. These "consulting" payments began in March 2021 and ended in September 2021. They totaled $242,127.58

44.    On or about October 6, 2021, Plaintiff Oakley sent $150,000 to James Passilla, which was owed to Mr. Passilla by Defendant Papalini for medical equipment Defendant Papalini had purchased for his business, Springs Medical Associates. This transfer on behalf of Defendant Papalini was intended to be a loan to Mr. Papalini.

45.    On October 8, 2021, Plaintiff Oakley sent an email to Defendant Papalini in which he informed him that he was no longer willing to give Papalini "consulting" payments and that Defendant Papalini's daughter, Brittany Papalini, whom Plaintiff Oakley had hired at Summit as a favor to Papalini, would be terminated, effective October 23, 2021, because the time she spent at Summit's offices was in fact used for Mr. Papalini's businesses. In the same email, Plaintiff Oakley also demanded repayment of loans he had made to Defendant Meridian. Pl. Exh. 10.

46.    On October 20, 2021, Defendant Papalini sent an email (the "October 20, 2021 email") to Plaintiff Oakley. In the email he made two fraudulent statements: a) that he (Papalini) had been the COO of Summit; and 2) that Summit was the successor in interest to Springs Medical. Based on information and belief,

18

Defendant Papalini has tried to paint Summit as the successor in interest to Springs Medical to misdirect the Trustee's attorney in that bankruptcy and deflect attention from money that he withdrew from Springs Medical when he was an officer of that company.  In the same email Defendant Papalini "offer[ed]" to remove Plaintiff Oakley from the Partnership.  Pl. Exh. 11.

47.     On October 25, 2021 Plaintiff Oakley responded to the email rejecting Defendant Papalini's "offer" to remove Plaintiff Oakley as an owner of the Partnership.  Pl. Exh. 12.

48.     On November 3, 2021, Defendant Joe Mulvihill, who was not and is not a partner, nor a member or manager of the Partnership, filed with the Florida Secretary of State noting the formation of a new company called "75 Printers Parkway Holdings LLC" (the "Holdings Company").  The Holdings Company was listed as being located at the same building as the Partnership.  (The Holdings Company is listed as Suite 255, while the Partnership occupies suite 245).  Pl. Exh. 13.  Based on information and belief, the similarity of its name to the Partnership was intended to legitimize the theft of the Partnership's chief asset, the Real Property.

49.     Seven days later, on November 10, 2021, Mr. Papalini, without authorization, removed Mr. Oakley's name from the ownership structure of the Partnership through Florida's Secretary of State web portal.  Pl. Exh. 14.  Mr. Oakley

19

received automatic notification of the unauthorized change. When confronted, Mr. Papalini claimed, by email, that his unauthorized change was an error by his assistant, Lourdes Jensen ("Ms. Jensen") and that he would have it corrected immediately. Pl. Exh. 15.  He did not do so.  The next day, seeing that Mr. Papalini had not corrected the change, Mr. Oakley, as manager of the Partnership, made the correction.  Pl. Exh. 16.

50.     On November 11 and 12, 2021, Mr. Papalini received formal notice via email, and Mr. Papalini and Mr. Mulvihill were sent letters via certified mail, informing them of what they already knew: that the Partnership was owned jointly by Mr. Oakley and Mr. Papalini, that Mr. Papalini lacked authorization to change the ownership structure of the Partnership, and that Mr. Papalini lacked authorization to unilaterally encumber the Real Property with new debt.  Pl. Exh. 17.

51.     At all times relevant to this Complaint, Mr. Mulvihill was aware that Mr. Oakley was a joint partner with Mr. Papalini in the Partnership, and frequently discussed this and other issues with Mr. Oakley, as the three had been friends prior to the tortious actions of the Defendants.

52.     On November 10, 2021, Mr. Papalini withdrew, using wires, $25,000 from the bank operating account of the Partnership.  Based on information and belief the withdrawal was not used for the Partnership's business, but rather was deposited in another account controlled by Mr. Papalini, that of Defendant EquitiFirst, which

20

is unrelated to the Partnership.  The subject line of the withdrawal reads "TRANSFER ND ****6126".  Pl. Exh. 18.

53.    On November 11, 2021, Mr. Oakley, through his attorney, on behalf of the Partnership, by email and certified mail, demanded the return of the $25,000 which had been withdrawn from the Partnership's operating bank account and placed in the account of an unrelated company, that of Defendant EquitiFirst.  Pl. Exh. 17.  Mr. Oakley received a response by regular mail, postmarked December 3, 2021, that the money would not be returned.  Pl. Exh. 19.

54.    In a document entitled "special warranty deed," first provided by the Defendants in February 2022, that bears the date of November 11, 2021, and is executed by Mr. Papalini, (the "False Deed") Mr. Papalini purported to convey the Real Property – valued at $1.55 Million – on behalf of the Partnership, to the Holdings Company, which had been formed by Mr. Mulvihill the week before.  Pl. Exh. 20.

55.    In signed settlement documents first obtained by Plaintiffs from Defendants in February, 2022, bearing the date of November 11, 2021, Mr. Papalini signed forms/documents, despite warnings within the forms/documents regarding potential state and federal charges of perjury for false statements, falsely stating that: (a) he was the "President" of the Partnership, when in fact he was not the President, and knew that he was not the President; (b) the Partnership was a corporation; and

21

(c) the address of the Partnership was Suite 255, which was the address of the Holding Company, not the address of the Partnership.  Pl. Exh. 22.

56.    These forms/documents included: (a) a "Seller's Statement of Settlement", Pl. Ex. 22, p. 66; (b) a 1099-S "Proceeds from Real Estate Transactions" form, *id*., pp. 67-68; (c) a Colorado Department of Revenue form 1033, *id*., pp. 69-70; and (d) a "Foreign Investment in Real Property Transfer Act of 1980" Certification, *id*., pp. 71-72.   Based on information and belief, suite number 255, rather than the proper Partnership address of Suite 245, was used in all settlement documents related to the fraudulent transfer of the Real Property because Defendants Papalini and Mulvihill sought to hide any U.S. mail confirmations of the illicit transaction from Plaintiff Oakley, at least for a time.  Suite 255 was a suite in the same building as the Partnership, and is a suite from which Defendants Mulvihill and Papalini transact business.  *See* Pl. Exh. 13, 21.

57.    The Partnership and the Holding Company are completely unrelated entities.  Based on information and belief, the latter was formed on November 3, 2021, eight days before the fraudulent transfer of the Real Property, for the purpose of lending an air of legitimacy to that fraudulent transfer.

58.    Section 8.3(g) of the operating agreement of the Partnership (the "Operating Agreement"), signed by both Mr. Oakley and Mr. Papalini, prohibits the

22

sale of "all or substantially all of the assets of the Company" without "the consent of the Members." Pl. Exh. 22.

59.    The Operating Agreement states that the Partnership is a limited liability company formed under Florida's Limited Liability Company Act.  Under Article 2, it requires that any action be approved by the Members, which are Mr. Oakley and Mr. Papalini.  Article 8 requires the agreement of the members prior to disposal of any asset of the Partnership, and prior to any lien or encumbrance being placed on any asset of the Partnership.  *Id*.

60.    Printers Parkway Partners LLC was formed for the sole purpose of owning, maintaining and managing the Real Property located at 75 Printers Parkway, and collecting revenue and rental income obtained through that Real Property.

61.    The Real Property is the primary asset of the Printers Parkway Partners LLC.

62.    Mr. Oakley never consented to the sale of the Real Property.

63.    Mr. Papalini and Mr. Mulvihill were both aware: (a) that Mr. Oakley opposed selling the Real Property; (b) that Mr. Oakley was a principal Member and Manager of Printers Parkway Partners LLC and (c) that Mr. Oakley's consent was required for any disposal, transfer or encumbrance of assets of Printers Parkway

23

Partners LLC.  Eric Papalini and Joe Mulvihill, with fraudulent intent, utilized corporate structures which they controlled to steal the Real Property.

64.     The False Deed contains a material misstatement or false claim because Mr. Papalini had no authority to execute the Deed on behalf of the Partnership without the consent, knowledge, and signature of Mr. Oakley.  In executing the False Deed Mr. Papalini was warranting that he does have the sole authority to transfer the Real Property, which is a material misstatement.

65.     On November 17, 2021, in response to Plaintiff Oakley's inquiry, Bob Holston sent a text message to Plaintiff Oakley confirming that mortgage payments were up to date for the Reed Trust Mortgage and the Holston Mortgage.  Pl. Exh. 24.  Holston purposefully omitted the material fact that he had presumably sold his mortgage interest to Defendant Mulvihill on July 15, 2021.  Holston also omitted the material fact that Defendant Papalini had fraudulently transferred the Real Property to Defendant Mulvihill.  Based on information and belief, Holston was aware that the transfer had occurred.

66.     On November 24, 2021, L.A. Healthcare, a tenant of the Partnership at the Real Property, wired its rent payment to the bank holding account of the Partnership.  The deposit was in the amount of $3,685.78.  The subject line read: "LA HEALTHCARE AP PAYMENT ID: 021201383 75 PRINTERS PARKWAY PA."  Pl. Exh. 18.

24

67.     On November 24, 2021 Mr. Papalini withdrew, using wires, $4,000 from the bank operating account of the Partnership.  Based on information and belief the withdrawal was not used for the Partnership's business, but rather was deposited in another account controlled by Mr. Papalini, for EquitiFirst Funding, Inc., which is unrelated to the Partnership.  The subject line read: "TRANSFER ND ****6126". Pl. Exh. 18.

68.     On December 6, 2021, unbeknownst to Plaintiff Oakley, Defendant Papalini executed an unauthorized assignment of the $1,200,000 Reed Walker Trust Mortgage, transferring that Mortgage from the Partnership to the Holdings Company, an unrelated entity.  Pl. Exh. 22, pp. 58-59.  Defendant Papalini signed the document as "President" of the Partnership, which was not a title he held either in Sunbiz.org or under the Operating Agreement.  *Id.*  Defendant Papalini was not authorized to sign this document unilaterally, as was known to Defendant Mulvihill, the owner of the Holdings Company, and to Defendant Papalini.  Neither of the two informed Plaintiff Oakley, although they knew his interests were affected.

69.     Sometime in December, 2020, Mr. Papalini told two employees of Summit Care that Summit would soon go bankrupt and that Mr. Papalini would employ them when that happened.

70.     Sometime between 5:00 p.m. Friday, December 17, 2021 and 7:30 a.m. Monday, December 20, 2021, Mr. Papalini entered the premises rented by Summit

25

Care, when it was closed for business, without Plaintiffs Summit's permission. Based on information and belief, Mr. Papalini used the master key to the Real Property, which opened only the rear balcony door, as all other locks had been changed by Plaintiffs Summit for security, and there was no apparent forced entry. A copy of the police report is attached hereto as Exhibit 25. All doors had been locked the previous Friday and the rear balcony door had been discovered unlocked on Monday morning. Only Mr. Papalini and Mr. Oakley had master keys.

71.     Mr. Papalini removed the Sciex Machine. The Sciex Machine is highly sensitive and requires special transport if it is taken any significant distance, as jostling will ruin its calibration. It is extremely heavy. Mr. Papalini had no permission or authorization to remove the Machine. The Sciex Machine was purchased by Summit LLC from Cambridge Group for $297,000 in December 2020. *See* ¶ 30, *supra*.

72.     After purchasing the Machine from Cambridge Group in 2020, Plaintiffs Summit had paid $9,885.58 for the Machine to be moved to its offices, and purchased service for the machine under a one-year service contract with ABSciex, for which Summit paid $46,968.69. In addition, Summit purchased an insurance policy (the "Policy"), guarding against loss due to the theft or damage of the Machine. The Policy was purchased through an insurance broker named Eric Atsma

26

("Mr. Atsma"). Mr. Atsma is a friend of Mr. Papalini. The underwriter for the Policy is the Hartford. Pl. Exh. 26.

73.    The Sciex Machine generates profits of approximately $60,000-$80,000 a week for Summit. Its use provides the main source of profit for Summit which in turn allows Summit to employ its employees and cover its operating costs.

74.    Based on information and belief, the Sciex Machine was first moved to Meridian,[3] which rents suite 100 at the Real Property, as a tenant of the Partnership, and is liable for rent to the Partnership. Meridian's principal is Mr. Mulvihill.

75.    On December 20, 2021, an employee of Summit LLC discovered the theft and it was reported to the Colorado Springs Police Department. The responding officer took a DNA sample from an extension cord which had been removed from the machine and left behind. She also took latent prints from the door that had been opened. Pl. Exh. 25.

76.    The responding officer noted that there was a camera above the entry door of Meridian through which the Machine would have had to enter if it was located in Meridian's rental unit. The officer attempted to make contact Meridian

---

3.    The Machine would require a moving company with specialized experience to move it any significant distance, due to its sensitive calibration. Such a move would have been highly visible. Accordingly, it is extremely unlikely that the Machine has left the premises of the Real Property. The only other suite, besides Summit's and Meridian's, was occupied at the time by a third party, L.A. Healthcare, which vacated in late January, 2022.

27

to obtain a recording of the previous few days but there was no response to a knock and mail was piled up outside the door, despite the fact that the officer was there during reported open hours.  Meridian's sole listed officer is Defendant Mulvihill.  Pl. Exh. 27.

77.     On December 20, 2021, Mr. Oakley filed a claim with the Hartford through the insurance broker, Mr. Atsma, and provided the police report.  Based on information and belief, the next day, December 21, 2021, Mr. Papalini personally visited Mr. Atsma and told him he (Mr. Papalini) was entitled to any insurance proceeds–despite the fact that the machine was insured by Summit Care and had been purchased by Summit LLC from Cambridge Group–because he was the rightful owner.  Based on information and belief, at the time that he was trying to collect proceeds from the theft, Mr. Papalini had possession of the Machine.

78.     Between December 17 and December 21, 2021, Mr. Oakley's 2013 Hardtop Range Rover (the "Vehicle") was parked at 850 East Harvard Avenue, 305, Denver, CO 80210 (where another office of Summit is located, which is known to Defendants).  On December 21, 2021 Mr. Oakley entered his vehicle to drive to Colorado Springs.  He had driven five blocks and was approaching the on-ramp of the Interstate Highway 25 when the engine of the vehicle seized.  The Vehicle was towed to a Range Rover dealership (the "Dealership") for inspection and repairs.

28

79.    On December 21, 2021, the Dealership determined that diesel exhaust fluid ("DEF") had been added to the Vehicle's gas tank, causing the engine to seize. While inspecting the Vehicle the Dealership found an unauthorized tracking device attached to the Vehicle.  Pl. Exh. 28.  The tampering with Mr. Oakley's vehicle caused Mr. Oakley's wife, Jacqueline English, to fear for his physical safety and possible future attempts on his life.

80.    The cost of repairing the Vehicle to bring it back to working order was approximately $2,500.00.

81.    On December 23, 2021, Summit LLC was served a "Notice to Quit" the Real Property.  The notice was delivered by email to Mr. Oakley's attorneys from Mr. Mulvihill's attorneys, using wires/internet, and by use of the mails.  Pl. Exh. 29.

82.    On December 23, 2021 the notice to quit was also posted on all Summit LLC doors, causing Summit LLC employees to be afraid for their livelihoods just before the Christmas holidays.

83.    On December 30, 2021 L.A. Healthcare wired its rent payment to the bank operating account of the Partnership.  The rent payment was in the amount of $3,409.63.  That same day Eric Papalini withdrew, using the wires, $3,409.00 from the account with a reference of "Loan repayment ND ****6126".  Pl. Exh. 30.  Based on information and belief the withdrawal was not used for the Partnership's business,

29

but rather was deposited in another account, controlled by Mr. Papalini, for Defendant EquitiFirst.  Defendant EquitiFirst is unrelated to the Partnership.

84.     On January 12, 2022, Plaintiffs 75 Printers Parkway Partners LLC and Oakley, having become aware of the filing of the Fraudulent Deed, filed a Petition for an Order to Show Cause why the Fraudulent Deed should not be stricken under Colo. Stat. 105.1.  Pl. Exh. 31.  The filing was made in Colorado State District Court in El Paso County, Colorado because the Real Property sits in that County.  *See* 2022CV30059.

85.     On January 13, 2022, the Colorado District Court issued an order that a Show Cause hearing would be held on February 11, 2022.  Pl. Exh. 32.

86.     The same day that the Show Cause Order was issued, on January 13, 2022, Mr. Papalini walked down the hall of the Orlando building in which he has offices and told his friend Eric Atsma–the insurance agent–that Cambridge had repossessed the Machine.  Eric Atsma and his boss called Mr. Oakley to share this development and Mr. Oakley immediately notified, by email, the insurance company and Colorado Springs Police Department of this development.  Pl. Exh. 6.

87.     Based on information and belief, Mr. Mulvihill also told insurance investigators, around the same time, that Mr. Papalini had "repossessed" the Sciex Machine.  Pl. Exh. 34, p. 1 ¶ 3, p. 2 ¶ 1.  Mr. Papalini had not served Mr. Oakley or Summit with any kind of notice regarding his purported right to the Machine.  Based

30

on information and belief, Mr. Mulvihill told the insurance investigator that he would provide evidence of notices of repossession the next day, but failed to do so. *Id.*, p. 2, ¶ 1.  These claims have caused the Hartford to delay paying Summit for the loss under the Policy.

88.    On January 18, 2022, Messrs. Mulvihill and Papalini's assistant, Lourdes Cristina Jensen, accessed the Colorado Secretary of State website to file the incorporation of a company with a confusingly similar name to that of Summit, namely "Summit View Primary Care PLLC" (hereinafter, "the View").  Pl. Exh. 33. The address registered with the Colorado Secretary of State was Suite 105 at the Real Property.  Ms. Lourdes was named as the Agent for Service of Process, and the owner/incorporator was a third-party registered nurse.  Based on information and belief, Mr. Mulvihill and Mr. Papalini intended to partner with this third party to become approved to bill Medicare/Medicaid and provide medical services at that location, using the Sciex 4500 Machine.  Suite 105 had previously been occupied by L.A. Healthcare, which had chosen not to renew its lease and vacated in late January 2022.  Based on information and belief, the RICO Enterprise Defendants intended that the theft of the Sciex 4500 Machine would drive Plaintiffs Summit out of business, and intended to capture the business from Plaintiffs Summit's former clientele using a confusingly similar name and by being located in the same building.

31

89.     On January 20, 2022, Plaintiffs Oakley and 75 Printers Parkway Partners, LLC, by and through their attorney, demanded the return of the second and third withdrawals from the Partnership's bank operating account, stating the Partnership's rightful ownership of the funds, and demanding an accounting of all rental income collected by Mr. Papalini for the Partnership/Real Property. Pl. Exh. The demand was sent via certified mail and via email. No response was received.

90.     On January 20, 2022, Plaintiffs Summit, by and through their attorneys, by email and certified mail, demanded return of the Sciex Machine to Summit from Defendants Joe Mulvihill and Meridian, stating their rightful ownership. Pl. Exh. 35.

91.     On January 21, 2022 a Colorado State District Court in El Paso County, Colorado entered an order placing the Real Property in receivership. Pl. Ex. 32.

92.     On January 27, 2022 the demand for return of the Sciex Machine was rebuffed by Mr. Mulvihill and Meridian's attorneys, through a letter sent by U.S. mail and by email. Despite Mr. Mulvihill's statements to insurance investigators to the contrary (Pl. Exh. 34), Mr. Mulvihill denied that the Machine was in Meridian's suites, that he had ever been in possession of the Machine, or that he had aided Mr. Papalini in taking the Machine. Pl. Exh. 42.

93.     On January 28, 2022, Plaintiffs sent a demand letter, by email and certified mail, to Defendant Papalini and his attorney, as well as his assistant Lourdes

32

Jensen, regarding the Sciex Machine.  The demand letter: (a) asking for confirmation that Defendant Papalini had expressed to the Colorado Police Department and the Hartford that he had entered Summit's premises and taken the Machine; (b) asking for evidence he claimed to have regarding his right to "repossess" the Machine; (c) reiterating Plaintiffs ownership of the Machine; (d) demanding return of the Machine; (e) demanding to know the location of the Machine; and (f) asking for confirmation of Mr. Mulvihill's statements that neither he nor Meridian had ever possessed the Machine or aided in its removal from Summit's offices.  Pl. Exh. 44. No reply was received to any of the three letters sent by mail, or to the emails.

94.     On February 1, 2022, Plaintiffs Summit sent a follow-up letter, by email and certified mail, to Mr. Mulvihill regarding the Machine, asking that he clarify where the Machine was located, confronting him with statements he had made to insurance investigators, asking for proof of repossession and/or notices of repossession claimed to have been sent, and requesting video surveillance footage from Meridian's security cameras, which had previously been requested by police. Pl. Ex. 43.  There was no response.

95.     Based on information and belief, the Sciex 4500 is currently located in Meridian's suite, #105 at the Real Property.

96.     On February 4, 2022, unbeknownst to Plaintiff Oakley and without his consent, Defendant Papalini caused to be filed a fraudulent tax return (the

33

"Fraudulent Tax Return") to the United States Internal Revenue Service, on form 1120.  Pl. Exh. 38, p. 37-46.   Form 1120 is the form designated for Corporations. Defedant Papalini filed the tax return on this form knowing that the Partnership had always held itself out to be a limited liability company, and despite the fact that the previous year's tax return for 2020 had been filed on Form 1065, which was well known to Defendant Papalini.  Pl. Exh. 5, 39.  Further, the Partnership had applied for its EIN with the Internal Revenue Service as a partnership, not as a corporation, and had been instructed in the EIN issuance letter to file its taxes on form 1065.  Pl. Exh. 45.

97.     The Fraudulent Tax Return was filed electronically by a California-based accountant that the Partnership had not previously used.  *Id*.  Plaintiff did not become aware of the tax return's existence until February 9, 2022, when Defendant Papalini's response to the Colorado action was received, 36 hours before the hearing was scheduled.   At the time that Defendant Papalini caused the Fraudulent Tax Return to be filed, the Colorado suit had been filed and his response to the suit was pending.  Based on information and belief, this Fraudulent Tax Return was filed for the purpose of lending credibility to the fraudulent conveyance of the Real Property and to bolster Papalini and Mulvihill's arguments in the Colorado action.

98.     In his verified response to the Colorado suit, dated February 9, 2022, Defendant Papalini attached a document (the "False Operating Agreement") which

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

was signed only by himself and witnessed by no one, on which is printed the date of August 31, 2020.  Pl. Ex. 38, pp. 28-37.  The False Operating Agreement purports to be an operating agreement for the Partnership, despite the fact that it had never before been seen by Plaintiff Oakley.  The document states that the Partnership is a limited liability company incorporated under Florida statute 605.0105.  *Id*., p. 38. The document conflicts with the Secretary of State record in that it lists only Eric Papalini as a Member, while the Secretary of State record always listed both Defendant Papalini and Plaintiff Oakley as members, with the exception of the 24 hour period on November 10, 2021, when Defendant Papalini claimed to have mistakenly deleted Plaintiff Oakley's name.  *See* ¶ 50, *supra*.

99.    In the same verified filing of February 9, 2022, Defendant Papalini, through his Colorado attorney, submitted, using wires/internet, the October 20, 2021 email containing these fraudulent statements, as an attachment to his response in case No. CV202230059 in El Pasto County District Court in Colorado.  Pl. Exh. 38.

100.   On February 11, 2022 a show cause hearing was held in Colorado District Court.  The Court determined that the action was more appropriately brought as a quiet title action, and ordered the re-filing of the complaint.  Although the Court was required to dissolve the receivership pending the filing of the new complaint, it indicated that it would be inclined to re-instate the receivership should that be requested.  Pl. Exh. 40.  The action remains pending.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

101.   On March 20, 2022, demand was made, via email and U.S. certified mail, to Eric Papalini and his attorney, Pedro Malaret, for treble the amount of the total fraudulent withdrawals from the Partnership's bank operating account, $97,227.  Pl. Exh. 41.  No response has been received.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**
**Under Florida and common law**
**Against Defendant Papalini**

102.  Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

103.   Defendant Papalini is an manager and member of the Partnership and as such owes a duty of fiduciary care to the Partnership.

104.   Mr. Papalini breached his duty of care to the Partnership by withdrawing funds from its operating account on multiple occasions and depositing those funds into the account of an unrelated company, or otherwise disposing of the funds in a manner which did not benefit the Partnership.  Specifically, he made the following withdrawals from the operating bank account of the Partnership:

      a.   A withdrawal on November 10, 2021 in the amount of $25,000;

      b.   A withdrawal on November 24, 2021 in the amount of $4,000;

      c.   A withdrawal on December 30, 2021 in the amount of $3,409.00.

36

105.   Defendant Papalini also breached his duty of care to the Partnership by signing a the False Deed purporting to convey the main asset of the Partnership, the Real Property, to a third party, the Holding Company and/or Mr. Mulvihill, without permission of Mr. Oakley, as required under the Operating Agreement, and without conveying any proceeds from the sale to the Partnership.

106.   The Partnership was proximately harmed by Mr. Papalini's breaches of fiduciary duty, in that it lost $32,409 worth of rental income, which was diverted by Mr. Papalini to external accounts, between November 2021 and December 2021 through three withdrawals from the Partnership's bank operating account.   The Partnership continues to lose revenue from diverted rent proceeds.   Based on information and belief, Mr. Papalini likely utilized Partnership assets prior to the withdrawals of November and December 2021 in ways that did not benefit the Partnership; specifically, he diverted the Partnership's assets to a separate company which he owns, EquitiFirst.   The Partnership was also proximately harmed by Mr. Papalini's breaches because the ownership of its primary asset, the Real Property, worth $1,550,000, is contested.   The alleged proceeds from its sale have not been remitted to the Partnership bank operating account.   Mr. Oakley was proximately harmed by Mr. Papalini's breaches because he has lost his rightful share of the proceeds derived from the Real Property and the Partnership.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL 33304*

107.   Wherefore, Plaintiffs request actual and punitive damages, and such other relief as this Court may deem just and proper.

## COUNT II
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### Under Florida law
### Against Defendants Mulvihill, the Holding Company, and Meridian

108.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

109.    Mr. Mulvhill was aware that Mr. Oakley was a principal and Manager of the Partnership.  He was also aware that Mr. Papalini was not authorized to remove Mr. Oakley's name from the Partnership, and that to do so was a breach of fiduciary duty.

110.   Mr. Mulvihill and his company 75 Printers Parkway Holdings LLC aided in the breach of that fiduciary duty by acting in concert with Mr. Papalini in the removal of Mr. Oakley's name from the Partnership, and actively attempting to make it appear that the removal was legitimate by forming a company with a very similar name, 75 Printers Parkway Holdings LLC, that is located in the same building as the Partnership.

111.   Mr. Mulvihill was aware that Mr. Papalini was not authorized to dispose of the Real Property, which belonged to the Partnership, without the consent of Mr. Oakley, and that to do so was a breach of fiduciary duty.

38

112.    The Partnership and Mr. Oakley have been proximately damaged by the concerted actions of Defendants Mulvihill, the Holding Company, Meridian and Papalini through a loss of revenue deriving from the Real Property, deprivation of the use of funds which rightfully belong to the Partnership, costs and time incurred in attempting to set aside the fraudulent conveyance of the Real Property, and the loss of the value of the Real Property itself.

113.    Wherefore, Plaintiffs request actual and punitive damages, and such other relief as this Court may deem just and proper.

**COUNT III**
**BREACH OF CONTRACT**
**Under Florida and common law**
**Against Defendant Papalini**

114.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

115.    The Partnership operates pursuant to an Operating Agreement, executed by Mr. Oakley and Mr. Papalini.

116.    Defendant Papalini has breached the terms of the Operating Agreement.

117.    In withdrawing revenue received in the bank operating account of the Partnership and using it for purposes other than the maintenance and overhead costs of the Partnership and its main asset, the Real Property, Mr. Papalini has breached

39

Sections 8.3(b) and 8.3(e) of the Operating Agreement, which prohibits a manager, without the consent of all members, from:

> (b) do[ing] any act which would make it impossible to carry on the ordinary business of the [Partnership], except as expressly provided in this Agreement; . . .
> (e) assign rights in specific [Partnership] property for other than a [Partnership] purpose.

118.   In fraudulently assigning the Partnership's ownership of the Real Property to Joe Mulvihill and/or the Holding Company, Eric Papalini has violated the Operating Agreement by "sell[ing] all or substantially all of the assets of the [Partnership]," contrary to Section 8.3(g).

119.   Defendant Papalini's breaches were the proximate cause of harm and damages to 75 Printers Parkway Partners LLC in that they deprived the Partnership of its main asset, and the uninhibited use of its main asset, the Real Property.  Mr. Papalini's actions have harmed both the Partnership and Mr. Oakley in forcing them to spend money and time fighting Defendants' tortious and wrongful actions.  Mr. Papalini has proximately harmed Mr. Oakley by depriving him of his share of profit generated by the Real Property and by depriving him of his ownership rights in the Real Property.

40

## COUNT IV
## FELONY THEFT, CLASS 3
## Under Colorado law, Colo. Stat. §§ 18-4-401, 18-4-405
## Against Defendants Mulvihill, Papalini, and Meridian

120.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

121.   Sometime between 5:00 p.m. Friday, December 17, 2021 and 7:30 a.m. Monday, December 20, 2021, Mr. Papalini made unauthorized entry into the leased premises of Plaintiffs Summit, and with the intent of depriving Plaintiffs Summit permanently of possession and use of the Machine, removed it from the premises.

122.   Based on information and belief, Defendants Mulvihill, Meridian and Papalini, with the intent to permanently deprive Plaintiffs Summit of possession and use of the Machine, continue to retain the Machine and refuse to confirm its whereabouts.

123.   The Sciex Machine is owned by Plaintiffs Summit.

124.   Neither Plaintiffs Summit nor their principals, Plaintiff Oakley and Dr. Wilner, authorized Defendants' actions with regards to the Sciex Machine.

125.   Plaintiffs Summit and Oakley have been proximately harmed by the actions of Defendants Papalini, Mulvihill and Meridian.  They have been deprived of the revenue generated by the Machine's use, $60,000-$80,000/week, and the value of the machine, $297,000.

41

126.   Wherefore, Plaintiffs Summit and Oakley are entitled to and demand three times the value of the Machine, plus three times the total lost revenue from the Machine until it was replaced, costs of this action, and attorneys' fees from Defendants Papalini, Mulvihill, and Meridian, pursuant to Colo. Stat. § 18-4-405, and such other relief as the Court deems just and proper.

**COUNT V**
**CONVERSION**
**Under Colorado law**
**Against Defendants Mulvihill, Papalini, and Meridian**
**(Pled in the alternative to Count IV)**

127.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph, excepting those paragraphs contained in Count IV.

128.   Sometime between 5:00 p.m. Friday, December 17, 2021 and 7:30 a.m. Monday, December 20, 2021, Mr. Papalini made unauthorized entry into the leased premises of Summit LLC and exercised dominion over the Sciex Machine, removing it from the premises and subsequently giving it over to the possession of Joe Mulvihill and Meridian Diagnostics.

129.   Based on information and belief, Defendants Mulvihill and his company, Defendant Meridian, and/or Defendant Papalini, continue to exercise dominion over the Sciex Machine.  It is currently located in Suite 105 of the Real Property.

42

130.   The Sciex Machine is owned by Plaintiffs Summit and its principals, Plaintiff Mikael Sean Oakley and Dr. Wilner.

131.   Neither Plaintiffs Summit, Plaintiff Oakley, nor Dr. Wilner authorized Defendants' actions with regards to the Sciex Machine.

132.   Demand was made to Mr. Mulvihill for the return of the Sciex Machine on January 20, 2022, and this demand was refused on January 27, 2022, by use of wires/internet.

133.   On January 28, 2022, demand was made by certified mail and email, to Mr. Papalini and to his attorney, for the return of the Sciex Machine and a confirmation of its location.  The demand was ignored.

134.   Plaintiffs Summit and Oakley have been proximately harmed by the actions of Defendants Papalini, Mulvihill and Meridian Diagnostics.

135.   Wherefore, Plaintiffs seek treble damages for: a) the value of the Machine, $297,000; b) the loss of revenue it would have produced each week, times the amount of time that lapses until its return; c) and such other relief as this Court may deem just and proper under Colorado law.

43

## COUNT VI
## FELONY THEFT
## Under Florida law
## Against Defendants Papalini and EquitiFirst

136.  Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

137.  On three separate occasions, as outlined above, Defendant Papalini withdrew funds from the bank operating account of the Partnership to use for purposes other than the business of the Partnership, and deposited the funds in the account of a separate entity unrelated to the Partnership, namely a separate company owned by Defendant Papalini, EquitiFirst.  The withdrawals included:

   a.    A withdrawal on November 10, 2021 in the amount of $25,000;

   b.    A withdrawal on November 24, 2021 in the amount of $4,000;

   c.    A withdrawal on December 30, 2021 in the amount of $3,409.00.

138.  The monies withdrawn are owned by the Partnership and were for the operating expenses of the Partnership, including maintenance of its primary asset, the Real Property.

139.  Defendant Papalini was not authorized to take or use funds of the Partnership for other unrelated companies he owned.

140.  In taking the funds, Defendant Papalini intended to deprive Plaintiffs the Partnership and Oakley of the funds temporarily or permanently, and of the

44

Partnership's use of the funds for business costs associated with maintaining the Real Property, and to appropriate the funds to his personal use and/or EquitiFirst's use.

141.   Plaintiff 75 Printers Parkway Partners LLC has been proximately harmed by the actions of Defendants Papalini and EquitiFirst in that it has not had access to these funds for the maintenance and care of the Real Property, and to make mortgage payments for the Real Property, or to collect any proceeds remaining after costs.

142.   Defendant Papalini has rebuffed and/or ignored demands for the return of the funds and for treble damages.

143.   Wherefore, Plaintiff 75 Printers Parkway Partners LLC is entitled to three times the value of the withdrawals, plus costs, interest and damages arising from the thefts, and such other relief as the Court deems just and proper, from Defendants Papalini and EquitiFirst, or such other entities to which Defendant Papalini may have transferred the funds.

## COUNT VII
## CONVERSION
### Under Florida law
### Against Defendants Papalini and EquitiFirst
### (plead in the alternative to Count VI)

144.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph, excepting those contained in Count VI.

45

145.   On three separate occasions, Defendant Papalini withdrew funds from the bank operating account of the Partnership to use for purposes other than the business of the Partnership.   Based on information and belief, those funds were deposited in the account of EquitiFirst.   The withdrawals included:

      a.    A withdrawal on November 10, 2021 in the amount of $25,000;

      b.    A withdrawal on November 24, 2021 in the amount of $4,000;

      c.    A withdrawal on December 30, 2021 in the amount of $3,409.00.

146.   The monies withdrawn are owned by the Partnership and were for the operating expenses of the Partnership, including maintenance of its primary asset, the Real Property.

147.   Defendant Papalini was not authorized to use funds of the Partnership for other unrelated companies he owned.

148.   Demand was made for the return of the monies on November 11, 2021 and January 20, 2022.   The first demand was refused on December 4, 2021.   There was no response to the second demand.   Demand was made for treble damages on March 20, 2022.   There was no response.

149.   Plaintiff 75 Printers Parkway Partners LLC has been proximately harmed by the actions of Defendants Papalini and EquitiFirst Funding, Inc.

150.   Wherefore, Plaintiffs seek treble damages, including the interest which would have accumulated on the funds had they remained deposited in the Operating

46

Account, as well as any bank fees caused by the removal of the funds, and such other relief as this Court may deem just and proper under Florida law.

## COUNT VIII
## CIVIL RICO
## Florida Civil Remedies For Criminal Practices Act,
## Fla Stat. § 772.103
## Against the RICO Enterprise Defendants

151.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

152.    Mr. Papalini owns and controls Cambridge Group.

153.    Mr. Mulvihill owns and controls 75 Printers Parkway Holdings LLC.

154.    Mr. Mulvihill owns and controls Meridian Diagnostics.

155.    Mr. Papalini owns and controls EquitiFirst Funding, Inc.

156.    The RICO Enterprise Defendants constitute an "enterprise" within the meaning of Fla. Stat. §§ 772.102(3) and 772.103(3), in that they are "a group of individuals associated in fact" and a group of corporations and legal entities associated in fact.

157.    The RICO Enterprise Defendants participated, directly and indirectly, in the conduct, management, or operation of the fraudulent enterprise's affairs through a "pattern of criminal activity" within the meaning of Fla. Stat. §§ 772.103(3) and 772.102(4).

47

158.   The RICO Enterprise Defendants share the common purpose of fraudulently utilizing wires and/or mails for the purpose of wrongfully divesting the Plaintiffs of their assets, and attempting to cause the bankruptcy of Plaintiffs Summit.  The RICO Enterprise Defendants have acted in concert, in a scheme and artifice, by and through their companies, to engage in a pattern of racketeering activity, as defined under 18 U.S.C. § 1962 et seq., in violation of Fla. Stat. § 772.103.  Specifically, they have conspired together to defraud the Plaintiffs the Partnership, Summit LLC, Summit Care, and Oakley, of funds, assets and real and tangible property rightfully belonging to them, and/or to damage Plaintiffs' real property and chattel, and deprive them of its use.

159.   These assets include:

    a.   The Sciex Machine, valued at $297,000;

    b.   The operating funds of the Partnership, withdrawn by wire three times in November and December 2021, totaling $32,409;

    c.   The Real Property, valued at $1,550,000;

    d.   Rental income to which the Partnership is entitled from the use of the Real Property;

    e.   Mr. Oakley's Vehicle.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL 33304*

160.   This fraudulent scheme conducted by the RICO Enterprise Defendants has been perpetrated intentionally through means of wire fraud, as defined under 18 U.S.C. § 1343, and mail fraud as defined under 18 U.S.C. § 1344.

161.   In perpetrating their fraud the RICO Enterprise Defendants have used wires to cause to be transmitted signals in the following ways:

    a.   Three electronic withdrawals, using wires, from the bank operating account of the Partnership for purposes not related to the Partnership's business;

    b.   Use of the wires on November 3, 2021 to establish a company with a name strikingly similar to that of the Partnership on www.Sunbiz.org.  This company, 75 Printers Parkway Holdings LLC, is located in the same building as the Partnership, was formed to lend an air of legitimacy to the fraudulent transfer of the Partnership's largest asset, the Real Property.

    c.   Use of wires on November 10, 2021 to remove Mr. Oakley's name from the Partnership's record with the Florida Secretary of State, which record appears at www.Sunbiz.org;

    d.   Use of wires on November 10, 2021 to transmit a lulling email to Mr. Oakley to falsely indicate that the removal of his name from the Partnership was inadvertent and would be corrected.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL 33304*

e.  Use of wires to cause the fraudulent warranty deed to be recorded on the website of the El Paso County, Colorado's Assessor's Office on or about November 12, 2021;

f.  Use of wires/internet by to cause to be transmitted, on December 23, 2021, by Mr. Mulvihill, an email to Mr. Oakley's attorneys, wrongfully attempting to evict Summit Care from its tenancy at the Real Property;

g.  Use of wires through the internet and telephone lines to falsely make claims to ownership of the Sciex Machine to insurance investigators, the Colorado Springs Police Department, and Plaintiffs' attorneys;

h.  Use of wires to establish a company with a name strikingly similar to that of Plaintiffs Summit on the Colorado Secretary of State's website on January 18, 2022.  This company, Summit View Primary Care PLLC, located in the same building as Summit Care, for the purpose of lending an air of legitimacy to the theft/conversion of the Sciex Machine and the fraudulent transfer of the Real Property, and to further harass Plaintiffs.  Based on information and belief, the RICO Enterprise Defendants intended the loss of the Sciex 4500 Machine to drive Plaintiffs Summit out of business, and intended to

50

capture Plaintiffs Summit's business by confusing former clients with a similar sounding name.

i.  Use of wires/internet by Mr. Mulvihill, to cause to be sent, through his attorneys, a letter via email, dated January 27, 2022, denying that he had the Sciex 4500 Machine in his possession, and that it had ever been in his possession or on the premises of Meridian, despite his refusal to provide video surveillance of the entranceway from the timeframe in question, and despite his assertion to insurance investigators that he was aware that Eric Papalini had "repossessed" the Machine;

j.  Use of wires and/or mails to transmit a fraudulent tax return, dated February 4, 2022, which in contrast to past tax returns and the Operating Agreement, listed the Partnership as a "corporation" and Defendant Papalini as its "President";

k.  Use of wires On February 9, 2022, by Defendant Papalini, to cause to be submitted, through his attorney, a "verified response" in case No. CV202230059 in El Pasto County District Court, Colorado, containing an attachment with fraudulent statements which he knew to be false and upon which he intended the Court to rely, as outlined above, specifically: (i) that he had been the COO of Summit and that

51

Summit was the successor to Springs Medical Associates; (ii) that he was President of the Partnership and had authority to act unilaterally; and (iii) that the Partnership was a corporation under Florida law; and

l. Use of wires and transmitted signals to detect Mr. Oakley's movements through the tracking device placed in his Vehicle.

162.   In perpetrating their fraud the RICO Enterprise Defendants have used the mails in the following ways:

a. Mr. Papalini, through his attorney, sent a letter via U.S. mail, postmarked December 3, 2021, refusing Mr. Oakley's demand to return the $25,000 withdrawn from the Partnership's operating bank account on November 24, 2021;

b. On December 23, 2021, Defendant Mulvihill caused to be sent via mail to Plaintiffs Summit and Oakley, a Notice to Quit Summit's leasehold at the Real Property, knowing that this action was fraudulent and wrongful, and based on the execution and filing of the False Deed.

163.   Plaintiffs were proximately harmed by the aforesaid wrongful actions of Defendants, by being deprived of the Partnership's assets, impeding the Partnership's ability to make mortgage payments, perform improvements and

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL 33304*

maintenance to the Real Property, impeding Summit LLC's ability to generate revenue and pay its employees, depriving Plaintiffs Summit of the use of the Sciex 4500 Machine, depriving Plaintiffs of their right to quiet enjoyment of the Real Property, depriving Plaintiffs of the ability to manage and maintain the Real Property, depriving Plaintiffs of the ability to rent out space in the Real Property pending litigation, depriving Mr. Oakley of proceeds due to him from the profits of the Partnership, subjecting Mr. Oakley to harassment in the form of electronic surveillance, and harassing Plaintiffs Oakley and Summit (and Summit employees) with threats of eviction from the Real Property.

164.   Wherefore, Plaintiffs seek treble actual damages, attorneys fees, and such other relief as this Court deems just and proper under Florida law.

### COUNT IX
### CIVIL RICO
### CO. STAT. Chapt. 17, §§18-17-101 through 18-17-103
### Against the RICO Enterprise Defendants

165.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

166.   Mr. Papalini owns and controls Cambridge Group.

167.   Mr. Mulvihill owns and controls 75 Printers Parkway Holdings LLC.

168.   Mr. Mulvihill owns and controls Meridian Diagnostics.

169.   Mr. Papalini owns and controls EquitiFirst Funding, Inc.

53

170.    Mr. Papalini owns and controls Cambridge Group.

171.    Defendants Papalini and Mulvihill have acted in concert, in scheme and artifice, by and through their corporations the Holding Company, Meridian, EquitiFirst and Cambridge Group, to engage in a pattern of racketeering activity, as defined under 18 U.S.C. § 1962 et seq., in violation of Colo. Stat. Chapt. 17, §§18-17-101 through 18-17-103.   Specifically, they have conspired together to defraud the Plaintiffs the Partnership, Summit LLC, Summit Care, and Oakley of funds, assets and real and tangible property rightfully belonging to them, as delineated above.

172.    This fraudulent scheme conducted by the RICO Enterprise Defendants has been perpetrated intentionally through means of wire fraud, as defined under 18 U.S.C. § 1343 and mail fraud as defined under 18 U.S.C. § 1344.

173.    In perpetrating their fraud the RICO Enterprise Defendants have used wires to cause to be transmitted signals in the following ways:

  a. Three electronic withdrawals, using wires, from the bank operating account of the Partnership for purposes not related to the Partnership's business;

  b. Use of the wires on November 3, 2021 to establish a company with a name strikingly similar to that of the Partnership on www.Sunbiz.org.   This company, 75 Printers Parkway Holdings

54

LLC, is located in the same building as the Partnership, was formed to lend an air of legitimacy to the fraudulent transfer of the Partnership's largest asset, the Real Property.

c.  Use of wires on November 10, 2021 to remove Mr. Oakley's name from the Partnership's record with the Florida Secretary of State, which record appears at www.Sunbiz.org;

d.  Use of wires on November 10, 2021 to transmit a lulling email to Mr. Oakley to falsely indicate that the removal of his name from the Partnership was inadvertent and would be corrected.

e.  Use of wires to cause the fraudulent warranty deed to be recorded on the website of the El Paso County, Colorado's Assessor's Office on or about November 12, 2021;

f.  Use of wires/internet by to cause to be transmitted, on December 23, 2021, by Mr. Mulvihill, an email to Mr. Oakley's attorneys, wrongfully attempting to evict Summit Care from its tenancy at the Real Property;

g.  Use of wires through the internet and telephone lines to falsely make claims to ownership of the Sciex Machine to insurance investigators, the Colorado Springs Police Department, and Plaintiffs' attorneys;

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

h.  Use of wires to establish a company with a name strikingly similar to that of Plaintiffs Summit on the Colorado Secretary of State's website on January 18, 2022.  This company, Summit View Primary Care PLLC, located in the same building as Summit Care, for the purpose of lending an air of legitimacy to the theft/conversion of the Sciex Machine and the fraudulent transfer of the Real Property, and to further harass Plaintiffs.

i.  Use of wires/internet by Mr. Mulvihill, to cause to be sent, through his attorneys, a letter via email, dated January 27, 2022, denying that he had the Sciex 4500 Machine in his possession, and that it had ever been in his possession or on the premises of Meridian, despite his refusal to provide video surveillance of the entranceway from the timeframe in question, and despite his assertion to insurance investigators that he was aware that Eric Papalini had "repossessed" the Machine;

j.  Use of wires and/or mails to transmit a fraudulent tax return, dated February 4, 2022, which in contrast to past tax returns and the

56

Operating Agreement, listed the Partnership as a "corporation" and Defendant Papalini as its "President";

k. Use of wires On February 9, 2022, by Defendant Papalini, to cause to be submitted, through his attorney, a "verified response" in case No. CV202230059 in El Pasto County District Court, Colorado, containing an attachment with fraudulent statements which he knew to be false and upon which he intended the Court to rely, as outlined above, specifically: (i) that he had been the COO of Summit and that Summit was the successor to Springs Medical Associates; (ii) that he was President of the Partnership and had authority to act unilaterally; and (iii) that the Partnership was a corporation under Florida law; and

l. Use of wires and transmitted signals to detect Mr. Oakley's movements through the tracking device placed in his Vehicle.

174.   In perpetrating their fraud the RICO Enterprise Defendants have used the mails in the following ways:

a. Mr. Papalini, through his attorney, sent a letter via U.S. mail, postmarked December 3, 2021, refusing Mr. Oakley's demand to return the $25,000 withdrawn from the Partnership's operating bank account on November 24, 2021; and

57

b. On December 23, 2021, Defendant Mulvihill caused to be sent via mail to Plaintiffs Summit and Oakley, a Notice to Quit Summit's leasehold at the Real Property, knowing that this action was fraudulent and wrongful, and based on the execution and filing of the False Deed.

175. Plaintiffs were proximately harmed by the aforesaid wrongful actions of Defendants, by being deprived of the Partnership's assets, impeding the Partnership's ability to make mortgage payments, perform improvements and maintenance to the Real Property, impeding Plaintiffs Summits' ability to generate revenue and pay its employees, and depriving Mr. Oakley of proceeds due to him from the profits of the Partnership.

176. Wherefore, Plaintiffs seek treble actual damages, attorneys fees, and such other relief as this Court deems just and proper under Colorado law.

**COUNT X**
**CIVIL RICO**
**18 U.S.C.A. § 1962**
**Against the RICO Enterprise Defendants**

177. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

178. Mr. Papalini owns and controls Cambridge Group.

179. Mr. Mulvihill owns and controls 75 Printers Parkway Holdings LLC.

58

180.   Mr. Mulvihill owns and controls Meridian Diagnostics.

181.   Mr. Papalini owns and controls EquitiFirst Funding, Inc.

182.   Mr. Papalini and Mr. Mulvihill have acted in concert, in a scheme and artifice, by and through their companies, to engage in a pattern of racketeering activity, as defined under 18 U.S.C. § 1962 et seq.  Specifically, they have conspired together to defraud the Plaintiffs the Partnership, Summit LLC, Summit Care, and Oakley of funds, assets and real and tangible property rightfully belonging to them, as delineated above.  This fraudulent scheme conducted by the RICO Enterprise Defendants has been perpetrated intentionally through means of wire fraud, as defined under 18 U.S.C. § 1343, and mail fraud as defined under 18 U.S.C. § 1344.

183.   In perpetrating their fraud the RICO Enterprise Defendants have used wires to cause to be transmitted signals in the following ways:

      c.   Three electronic withdrawals, using wires, from the bank operating account of the Partnership for purposes not related to the Partnership's business;

      d.   Use of the wires on November 3, 2021 to establish a company with a name strikingly similar to that of the Partnership on www.Sunbiz.org.  This company, 75 Printers Parkway Holdings LLC, is located in the same building as the Partnership, was formed

59

to lend an air of legitimacy to the fraudulent transfer of the Partnership's largest asset, the Real Property.

e. Use of wires on November 10, 2021 to remove Mr. Oakley's name from the Partnership's record with the Florida Secretary of State, which record appears at www.Sunbiz.org;

f. Use of wires on November 10, 2021 to transmit a lulling email to Mr. Oakley to falsely indicate that the removal of his name from the Partnership was inadvertent and would be corrected.

g. Use of wires to cause the fraudulent warranty deed to be recorded on the website of the El Paso County, Colorado's Assessor's Office on or about November 12, 2021;

h. Use of wires/internet by to cause to be transmitted, on December 23, 2021, by Mr. Mulvihill, an email to Mr. Oakley's attorneys, wrongfully attempting to evict Summit Care from its tenancy at the Real Property;

i. Use of wires through the internet and telephone lines to falsely make claims to ownership of the Sciex Machine to insurance investigators, the Colorado Springs Police Department, and Plaintiffs' attorneys;

j. Use of wires to establish a company with a name strikingly similar to that of Plaintiffs Summit on the Colorado Secretary of State's

60

website on January 18, 2022.  This company, Summit View Primary

Care PLLC, located in the same building as Summit Care, for the

purpose of lending an air of legitimacy to the theft/conversion of the

Sciex Machine and the fraudulent transfer of the Real Property, and

to further harass Plaintiffs.

k.  Use of wires/internet by Mr. Mulvihill, to cause to be sent, through

his attorneys, a letter via email, dated January 27, 2022, denying that

he had the Sciex 4500 Machine in his possession, and that it had

ever been in his possession or on the premises of Meridian, despite

his refusal to provide video surveillance of the entranceway from

the timeframe in question, and despite his assertion to insurance

investigators that he was aware that Eric Papalini had "repossessed"

the Machine;

l.  Use of wires and/or mails to transmit a fraudulent tax return, dated

February 4, 2022, which in contrast to past tax returns and the

Operating Agreement, listed the Partnership as a "corporation" and

Defendant Papalini as its "President";

m. Use of wires On February 9, 2022, by Defendant Papalini, to cause

to be submitted, through his attorney, a "verified response" in case

No. CV202230059 in El Pasto County District Court, Colorado,

61

containing an attachment with fraudulent statements which he knew to be false and upon which he intended the Court to rely, as outlined above, specifically: (i) that he had been the COO of Summit and that Summit was the successor to Springs Medical Associates; (ii) that he was President of the Partnership and had authority to act unilaterally; and (iii) that the Partnership was a corporation under Florida law; and

n. Use of wires and transmitted signals to detect Mr. Oakley's movements through the tracking device placed in his Vehicle.

184. In perpetrating their fraud the RICO Enterprise Defendants have used the mails in the following ways:

a. Mr. Papalini, through his attorney, sent a letter via U.S. mail, postmarked December 3, 2021, refusing Mr. Oakley's demand to return the $25,000 withdrawn from the Partnership's operating bank account on November 24, 2021; and

b. On December 23, 2021, Defendant Mulvihill caused to be sent via mail to Plaintiffs Summit and Oakley, a Notice to Quit Summit's leasehold at the Real Property, knowing that this action was fraudulent and wrongful, and based on the execution and filing of the False Deed.

62

185.  Plaintiffs were proximately harmed by the aforesaid wrongful actions of Defendants, by being deprived of the Partnership's assets, impeding the Partnership's ability to make mortgage payments, perform improvements and maintenance to the Real Property, impeding Plaintiffs Summits' ability to generate revenue and pay its employees, and depriving Mr. Oakley of proceeds due to him from the profits of the Partnership.

186.  Wherefore, Plaintiffs seek treble actual damages, attorneys fees, and such other relief as this Court deems just and proper under federal law.

**COUNT XI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Under Florida and common law**
**Against all Defendants**

187.  Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

188.  The following concerted acts of Mr. Papalini and Mr. Mulvihill as individuals and through their companies 75 Printers Parkway Holdings LLC and Meridian, were outrageous under Florida law:

   a.  Using the internet/wires to fraudulently remove Mr. Oakley's name from ownership of 75 Printers Parkway Partners LLC;

   b.  stealing the Sciex Machine, which was worth $297,000, from Plaintiffs Summit, and depriving Plaintiff Summit Care of its main

63

source of revenue and ability to pay its employees in the midst of the Christmas season and a national pandemic;

c.  attempting to prevent Plaintiffs Summit from recovering compensation under their insurance claim so that they could replace the Machine and continue do business and keep Summit's employees employed;

d.  attempting to receive funds from the Hartford for the stolen machine, knowing in fact that it was in the possession of Messrs. Papalini and Mulvihill, and Meridian.

e.  posting eviction notices on Summit Care's doors on December 23, 2021, right before the Christmas holiday, causing Plaintiffs Summits' employees to fear for their jobs, and causing Mr. Oakley

64

to spend hours on the phone with them in an attempt to reassure them, as well as causing extreme distress to Mr. Oakley himself.

f.  fraudulently executing a deed purporting to convey the Real Property, worth $1,550,000;

g.  causing the fraudulent warranty deed to be recorded on the website of the El Paso County, Colorado's Assessor's Office on or about November 12, 2021;

h.  Use of wires to establish a company with a name strikingly similar to that of Plaintiffs Summit on the Colorado Secretary of State's website on January 18, 2022.  This company, Summit View Primary Care PLLC, located in the same building as Summit Care, for the purpose of lending an air of legitimacy to the theft/conversion of the Sciex Machine and the fraudulent transfer of the Real Property, and to further harass Plaintiffs.  Based on information and belief, the RICO Enterprise Defendants intended the loss of the Sciex 4500 Machine to drive Plaintiffs Summit out of business, and intended to

65

capture Plaintiffs Summit's business by confusing former clients with a similar sounding name;

i. placing a tracking device on Mr. Oakley's vehicle, and putting DEF in his tank, which could have caused seriously bodily injury, especially had the Vehicle seized while traveling on Highway 25.

189. These acts were purposefully committed with the intent to cause Mr. Oakley extreme emotional distress, or at the very least with recklessness regarding the emotional distress that was likely to occur.

190. Mr. Oakley and his wife suffered extreme emotional distress as a result of these acts, including, but not limited to, fear for Mr. Oakley's physical safety.

191. Wherefore, Plaintiffs seek compensatory and punitive damages, and such other relief as this Court may deem proper under Florida and common law.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Under Colorado law
### Against all Defendants

192. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

193. The following concerted acts of Mr. Papalini and Mr. Mulvihill as individuals and through their companies 75 Printers Parkway Holdings LLC and Meridian, were outrageous under Colorado law:

66

a. Using the internet/wires to fraudulently remove Mr. Oakley's name from ownership of 75 Printers Parkway Partners LLC;

b. stealing the Sciex Machine, which was worth $297,000, from Plaintiffs Summit, and depriving Summit LLC of its main source of revenue and ability to pay its employees in the midst of the Christmas season and a national pandemic;

c. attempting to prevent Mr. Oakley from recovering compensation under his insurance claim so that he could replace the Machine and continue do business and keep Summit Care's employees employed;

d. attempting to receive funds from the Hartford for the stolen machine, knowing in fact that it was in the possession of Messrs. Papalini and Mulvihill, and Meridian.

e. posting eviction notices on Summit Care's doors on December 23, 2021, right before the Christmas holiday, causing Summit LLC's employees to fear for their jobs, and causing Mr. Oakley to spend

67

hours on the phone with them in an attempt to reassure them, as well as causing extreme distress to Mr. Oakley himself.

f.  fraudulently executing a deed purporting to convey the Real Property, worth $1,550,000;

g.  causing the fraudulent warranty deed to be recorded on the website of the El Paso County, Colorado's Assessor's Office on or about November 12, 2021;

h.  Use of wires to establish a company with a name strikingly similar to that of Plaintiffs Summit on the Colorado Secretary of State's website on January 18, 2022.  This company, Summit View Primary Care PLLC, located in the same building as Summit Care, for the purpose of lending an air of legitimacy to the theft/conversion of the Sciex Machine and the fraudulent transfer of the Real Property, and to further harass Plaintiffs.  Based on information and belief, the RICO Enterprise Defendants intended the loss of the Sciex 4500 Machine to drive Plaintiffs Summit out of business, and intended to

68

capture Plaintiffs Summit's business by confusing former clients with a similar sounding name;

i.   placing a tracking device on Mr. Oakley's vehicle, and putting DEF in his tank, which could have caused seriously bodily injury, especially had the Vehicle seized while traveling on Highway 25.

194.   These acts were purposefully committed with the intent to cause Mr. Oakley extreme emotional distress, or at the very least with recklessness regarding the emotional distress that was likely to occur.

195.   Mr. Oakley and his wife suffered extreme emotional distress as a result of these acts, including, but not limited to, fear for Mr. Oakley's physical safety.

196.   Wherefore, Plaintiffs seek compensatory and punitive damages, and such other relief as this Court may deem proper under Colorado and common law.

## COUNT XIII
## THEFT
## Under Colorado and common law
## Against Defendant Papalini, Mulvihill, and Meridian

197.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

198.   This action is to recover personal property located in Colorado Springs, Colorado, namely the Sciex Machine.

69

199.   To the best of the Plaintiffs' knowledge and belief, the Sciex Machine is being held at the offices of Meridian Diagnostics, LLC, located in Suite 105 on the first floor of the Real Property.   Meridian lists its sole owner as Defendant Mulvihill.  Pl. Exh. 27.

200.   Plaintiffs Summit, and Plaintiff Oakley and Dr. Wilner, as Plaintiffs Summit's principals, are entitled to recover the Sciex Machine, as Plaintiffs Summit are the owners of the Machine.

201.   The property has not been taken for any tax assessment or fine pursuant to law.

202.   The property has not been taken for any debt, pursuant to law.

203.   Plaintiffs were not served notice of any claims of Mr. Papalini, Mr. Mulvihill, or Meridian to the Sciex Machine.  No defendant named in this suit had permission to enter the premises of Summit LLC and remove the Machine.

204.   Summit LLC paid the full purchase price of $297,000 for the Machine to Cambridge Group in December 2020 and Plaintiffs Summit are the rightful owners of the Machine.

205.   WHEREFORE, Plaintiffs Summit LLC, Summit Care and Oakley demand possession of the Machine from the Defendants, and any other relief the Court deems just and proper.

70

**COUNT XIV**
**UNJUST ENRICHMENT**
**Under Florida and common law**
**(Plead in the alternative to Count X)**
**Against Defendants Papalini, Mulvihill, and Meridian**

206.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph, except the paragraphs contained in Count X.

207.   Plaintiffs Summit are 100% owner of the Sciex Machine.

208.   Based on information and belief, the Sciex Machine was intentionally removed from Summit's offices, without permission or notice, outside of Summit LLC's business hours, through the unauthorized entry of Eric Papalini.

209.   Based on information and belief, Meridian Diagnostics, through its owner and principal, Joe Mulvihill, voluntarily accepted and retained Plaintiffs Summit's personal property, the Machine.

210.   Wherefore, Plaintiffs Summit LLC, Summit Care and Oakley demand judgment against Defendants Papalini, Mulvihill and Meridian, for damages to be proved at trial, including interests, costs, and all other relief this Court deems just and proper.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

## COUNT XV
## UNJUST ENRICHMENT
## Under Florida and common law
## Against Defendants Papalini and Mulvihill

211.  Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

212.  On May 24, 2021, Mr. Oakley lent $300,000 to Mr. Papalini and Mr. Mulvihill towards the purchase of a yacht, "Harmony," to be held in Mr. Papalini and Mr. Mulvihill's names.  The money was delivered via bank check to Mr. Mulvihill and was cashed.

213.  Neither Mr. Mulvihill nor Mr. Papalini has repaid this loan.

214.  Wherefore, Plaintiffs demand $300,000, plus interest, damages and costs, and all other relief this Court deems just and proper.

## COUNT XVI
## UNJUST ENRICHMENT
## Under Florida and common law
## Against Defendants Papalini, Cambridge Group and Mulvihill

215.  Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

216.  On April 29, 2021, Mr. Oakley, through Summit LLC, lent $60,000 to Mr. Papalini, Cambridge Group and Mr. Mulvihill for the purchase of a private plane.  The money was sent via bank wire to Cambridge Group.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

217.    Neither Mr. Mulvihill, Cambridge Group, nor Mr. Papalini have repaid this loan.

218.    Wherefore, Plaintiffs demand $60,000, plus interest, damages and costs, and all other relief this Court deems just and proper.

<u>**COUNT XVII**</u>
<u>**UNJUST ENRICHMENT**</u>
<u>**Under Florida, Colorado and common law**</u>
<u>**Against Defendant Papalini**</u>

219.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

220.    Between February, 2021 and October, 2021, Mr. Oakley lent Mr. Papalini a total of $31,755.10 to pay Mr. Papalini's attorney.  The total sum consists of six payments, by check, as follows:

    a.  Check No. 142, dated January 21, 2021, in the amount of $5,000.00;

    b.  Check No. 295, dated February 26, 2021, in the amount of $10,000.00;

    c.  Check No. 340, dated February 17, 2021, in the amount of $10,000.00;

    d.  Check No. 250, dated June 24, 2021, in the amount of $5,000.00;

    e.  Check No. 556, dated October 26, 2021, in the amount of $1,755.10.

221.   The payments were made directly to Mr. Papalini's attorney.  Each of the six checks was sent to Mr. Papalini's attorney, and money was transferred six times between banks using wires.  These loans have not been repaid.

222.   Wherefore, Plaintiffs demand $31,551.10 from Defendant Papalini, plus interest, damages and costs, and all other relief this Court deems just and proper.

### COUNT XVIII
### UNJUST ENRICHMENT
### Under Florida and common law
### Against Defendants Papalini, EquitiFirst and Cambridge Group

223.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

224.   In late December 2020, through three wire transfers sent on December 22, 29 and 30, totaling $680,000, Plaintiffs Summit and Oakley lent $383,000 to Defendant Papalini and/or his companies EquitiFirst and Cambridge Group.

225.   Defendant Papalini has not repaid this loan, nor have his companies EquitiFirst and Cambridge Group.

226.   Wherefore, Plaintiffs Summit and Oakley demand $383,000 from Defendants Papalini, EquitiFirst and Cambridge Group, plus interest, damages and costs, and all other relief this Court deems just and proper.

74

## PRAYERS FOR RELIEF:

### Permanent injunction
### Against removal, encumbrance, mortgage or sale of 75 Printers Parkway Partners LLC's real and tangible assets without the written consent of Mr. Oakley, and against eviction of Summit Care until this lawsuit has been resolved

227.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

228.   By and through the actions of the RICO Enterprise Defendants, Plaintiffs have suffered irreparable injury in the form of:

    a. Loss of use of the Sciex Machine, loss of revenue generated by the Sciex Machine, and financial hardship to Summit LLC due to these losses, as well as the potential loss of employment Summit LLC's employees;

    b. Loss of operating funds necessary to keep the Partnership solvent and functioning on a day-to-day business;

    c. Emotional distress;

    d. Possible wrongful eviction of Summit Care by Defendant Mulvihill and the Holdings Company, which wrongfully claim to own the Real Property;

    e. Loss to the Partnership of unencumbered use of the Real Property and loss of revenue from the rental of the Real Property.

75

229.   Remedies at law are inadequate to protect against the hardships that have been done and will inevitably occur absent an injunction.

230.   A remedy in equity is warranted because the Defendants will not be harmed by being ordered not to withdraw funds from the Partnership's accounts for uses not related to the Partnership's operations.

231.   Defendants will not be harmed by the halting of any attempt to evict Summit Care, as Summit Care pays rent for the space it occupies under a rental agreement.

232.   The Holdings Company is not the rightful owner of the Real Property and thus will not be harmed by being estopped from evicting Summit Care.

233.   The balance of equities greatly favors the ordering of an injunction against removing funds from the operating account of the Partnership, as the funds are needed for the maintenance of the Real Property.

234.   Accordingly, the balance of interests and the interests of the public are best served by the entering of an injunction:

> a. directing that funds not be removed from the Partnership's Operating Account other than for maintenance or to pay bills;
>
> b. directing that eviction attempts be halted until lawsuits over the ownership of the Real Property are resolved; and

76

c. directing that the Defendants do not again attempt the unlawful removal of Mr. Oakley as a principal of the Partnership from the records filed with Florida's Secretary of State.

**Permanent injunction**
**Estopping Defendant Papalini from claiming to be, or have been an officer, agent, employee or representative of Plaintiffs Summit**

235. Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

236. By and through the actions of the RICO Enterprise Defendants, Plaintiffs have suffered irreparable injury in the form of:

a. Loss of use of the Sciex Machine, loss of revenue generated by the Sciex Machine, and financial hardship to Summit LLC due to these losses, as well as the potential loss of employment Summit LLC's employees;

b. Loss of operating funds necessary to keep the Partnership solvent and functioning on a day-to-day business;

c. Emotional distress;

d. Possible wrongful eviction of Summit LLC by Defendant Mulvihill and 75 Printers Parkway Holdings LLC, which wrongfully claim to own the Real Property;

77

    e.  Loss to the Partnership of unencumbered use of the Real Property and loss of revenue from the rental of the Real Property;

    f.  Attempts by Defendants to drive Plaintiffs Summit out of business and to capture Plaintiffs Summit's clientele and business revenue;

    g.  Attempts by Defendant Papalini to confuse the bankruptcy court regarding Plaintiff's Summit's relationship with him (Papalini) and business ventures with which Mr. Papalini was formerly associated, namely Springs Medial Associates, which is in bankruptcy.

237.  Remedies at law are inadequate to protect against the hardships that have been done and will inevitably occur absent an injunction.

238.  A remedy in equity is warranted because the Defendants will not be harmed by being ordered not to mislead courts or the public with claims that they are affiliated with Plaintiffs Summit.  Defendants Papalini and Mulvihill are not, nor were they ever, officers, agents, employees or representatives of Plaintiffs Summit.

239.  A remedy in equity is further warranted to protect Plaintiffs Summit against possible liability that might occur as a result of these false claims, and to protect the public from unauthorized acts that might be done in connection with such claims.

78

240.   The balance of equities greatly favors the ordering of an injunction estopping Defendant Papalini from making false claims regarding his non-existent relationship to Plaintiffs Summit.

## Declaration by the Court that 75 Printers Parkway Partners LLC is a limited liability company and partnership under Florida law, and issuance of a preliminary and permanent injunction estopping Defendant Papalini from attempting to change the structure of the Partnership or treating it as a corporation

241.   Plaintiffs reallege and incorporate by reference herein all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

242.   For the purposes of furthering their fraudulent schemes, Defendants, through Eric Papalini, caused to be filed a tax return for the Partnership on February 4, 2022.  In stark contrast to the Operating Agreement of the Partnership, previous tax returns filed for the Partnership, the understanding of the Parties as evidenced by email communications, the IRS' issuance of a partnership EIN, and the past actions of the Partnership which demonstrate its existence as a limited liability company under Florida law, Mr. Papalini claimed that the Partnership is a "corporation" under Florida law, rather than a limited liability company.

243.   Through his fraudulent actions Mr. Papalini has attempted to take advantage of an initial filing error made in setting up the Partnership, in which the

79

box for "corporation" was checked.  He has done so to justify the fraud described herein, including, but not limited to, the theft of the Real Property valued at $1.55 Million.

244.   Plaintiffs hereby seek a declaration by this Court that the Partnership is, was intended to be, and has been operated as a limited liability company under Florida law.

245.   Plaintiffs further seek an Order that the fraudulently filed tax return be amended to properly reflect the status of the Partnership as a limited liability company.

246.   Plaintiffs Oakley and the Partnership seek a declaration by this Court that he may correct the scrivener's error on Sunbiz.org.  Plaintiff Oakley, when made aware of the error in February 2022, and litigation already having commenced, decided not to correct the error until a Court had the chance to review evidence.

247.   Future assertions by the Defendants that the Partnership is a corporation could create civil and criminal liability for the Partnership and/or cause irreparable harm to its goodwill and reputation.  Plaintiffs therefore seek a temporary and permanent injunction barring Defendants from asserting that the Partnership is a corporation.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

**In the alternative to a declaration that the Partnership is organized as a partnership under Florida Law, a declaration by the Court that 75 Printers Parkway Partners LLC is a corporation under Florida law in which Plaintiff Oakley owns a 50% share**

248.   Plaintiffs reallege and incorporate by reference herein all preceding paragraphs of this Complaint as if fully set forth in this Paragraph.

249.   For the purposes of furthering their fraudulent schemes, Defendants, through Eric Papalini, caused to be filed a tax return for the Partnership on February 4, 2022.  In stark contrast to the Operating Agreement of the Partnership, previous tax returns filed for the Partnership, the understanding of the Parties as evidenced by email communications, the IRS' issuance of a partnership EIN, and the past actions of the Partnership which demonstrate its existence as a limited liability company under Florida law, Mr. Papalini claimed that the Partnership is a "corporation" under Florida law, rather than a limited liability company.

250.   Should this Court nonetheless determine that the clerical error and/or the actions of Mr. Oakley and Mr. Papalini more appropriately indicate that the Partnership is a corporation under Florida Law, Plaintiffs request that this Honorable Court issue a ruling that Mr. Papalini and Mr. Oakley are each 50% shareholders of the Partnership.

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

## Monetary Relief/Damages

251.   Plaintiffs seek judgment in an amount to be determined at trial, and costs, treble damages, interest, and attorneys' fees, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.


SUBMITTED this 13th day of April, 2022.

Susan Z. Jorgensen, Esq.
Law Offices of Susan Z. Jorgensen, P.A.
2598 E. Sunrise Blvd, Ste. 2104
Ft. Lauderdale, FL  33304
Susan@SusanJorgensenLaw.com
202-329-0098

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*

## VERIFICATION

Under penalty of perjury, the undersigned, Mikael Sean Oakley, declares that he has read the above complaint and the facts set forth herein are true and correct to the best of his knowledge and belief.

By: _____
MIKAEL SEAN OAKLEY

Dated: _____
4/12/22

83

*Law Offices of Susan Z. Jorgensen, P.A., 2598 E. Sunrise Blvd., Ste. 2104, Ft. Lauderdale, FL  33304*